In the Supreme Court of Georgia

Decided: November 2, 2015

S15A0834. HIGUERA-GUITERREZ v. THE STATE.

MELTON, Justice.

Following a jury trial, Rogelio Higuera-Guiterrez was found guilty of the felony murder of Santos Palacios-Vasquez and Antonio Clark, the voluntary manslaughter of Vasquez and Clark, conspiracy to traffic cocaine, and possession of a firearm during the conspiracy to traffic cocaine.[1] For the reasons

---

[1]On January 26, 2010, Guiterrez was indicted for two counts of malice murder (one for Vasquez and one for Clark), four counts of felony murder (two counts per victim predicated on aggravated assault and conspiracy to traffic in cocaine), two counts of aggravated assault with a deadly weapon (one for each victim), conspiracy to traffic in cocaine, and two counts of possession of a firearm during the commission of a crime (one related to aggravated assault of Clark and Vasquez and the other related to conspiracy to traffic cocaine). Following a jury trial, Guiterrez was found guilty of the following: (1) four counts of voluntary manslaughter as lesser included offenses of the two malice murder counts, one count of the felony murder of Clark predicated on aggravated assault, and one count of the felony murder of Vasquez predicated on aggravated assault; (2) two counts of felony murder (one for each victim predicated on conspiracy to traffic in cocaine); (3) conspiracy to traffic in cocaine; and (4) one count of possession of a firearm during the commission of a conspiracy to traffic cocaine. Guiterrez was initially sentenced to life imprisonment for each count of felony murder, with an additional five years for

set forth below, we must reverse.

1. The underlying facts of this case have already come before this Court in the appeal of Guiterrez's co-defendant, Delman Higuera-Hernandez, with whom Guiterrez shared a joint trial. There, this Court summarized:

> Construed most strongly in support of the verdicts, the evidence shows that [Hernandez] . . . met [James Platt, Jarrett Dixon, and Clark] at an apartment for the purpose of selling two kilograms of cocaine. After receiving a large amount of cash, [Hernandez] shot and killed Clark. Palacios-Vasquez was fatally shot, and [Hernandez] himself was shot in the abdomen. He fled with the help of others and sought treatment at a hospital, claiming that he was injured in an attempted robbery. Although [Hernandez] denied knowledge of the apartment, his blood was found at the crime scene, and a set of keys to the apartment was discovered at his house. Investigators also found over 28 grams of cocaine with a purity of at least 10% at the apartment in a different container from the purported two kilograms of cocaine offered for sale.

Higuera-Hernandez v. State, 289 Ga. 553, 553-554 (1) (714 SE2d 236) (2011).

In addition to these facts, the record shows that a jailhouse informant

---

both conspiracy to traffic in cocaine and possession of a handgun. The remaining charges were merged for purposes of sentencing, and, by later amendment, the charge of conspiracy to traffic in cocaine was merged into one of the felony murder counts as well. On April 9, 2010, Guiterrez filed a motion for new trial, amended on September 19, 2011 and May 7, 2012, that was ultimately denied on December 20, 2012. Guiterrez filed a timely notice of appeal, and after preparation of transcripts and record, his case was docketed to the April 2015 Term of this Court and submitted for decision on the briefs.

named Juan Flores Calderon testified that his cousin, Ando Calderon, is a drug supplier. Ando told Juan Flores that he provided a man named Vincente[2] with five kilos of cocaine at the Magnolia Apartments. Three kilos were reserved at an apartment in Magnolia Apartments, and Vincente, a close friend of Guiterrez, took the other two kilos to Hernandez at his nearby apartment for purposes of a drug sale. Vincente waited just outside Hernandez's apartment while the drug transaction was supposed to occur. Juan Flores initially provided this information to federal agents, who referred him to local police. At some point thereafter, Juan Flores shared a jail cell with Hernandez, who also conveyed details of the drug transaction and shootout to him. For example, prior to the sale, Hernandez met two African-American men and a Latino man in an Infiniti sedan, and led them to his apartment to conduct the transaction. As money was being exchanged, one of the African-American men pulled a gun, and Hernandez shot him.

In addition, Omar Custodia Monge, a longtime friend of Hernandez, testified that Hernandez called him immediately after being shot and requested

---

[2] Some evidence showed that one of Guiterrez's co-indictees, Juan Cervantes Maldonado, also goes by the name Vincente Renteria Maldonado.

3

assistance. Monge and Patricio, a cousin of Hernandez, drove to Hernandez's apartment complex where they found Hernandez and Antonio Lara-Landera, both of whom had been wounded in the shootout, waiting near some bushes. Monge then drove Hernandez to the hospital and overheard him tell Patricio to instruct Vincente and Guiterrez to retrieve money from the bushes where he had been found. Mirroring this testimony, Juan Flores testified that Hernandez told him that it was Guiterrez's responsibility to retrieve money, drugs, and weapons from the bushes following the shootout. Monge also recounted that Guiterrez followed his car to the hospital after being contacted by Hernandez, and, later that day, Vincente, Guiterrez, and Patricio met in Monge's presence to discuss retrieval of the drugs that had been left behind by Hernandez. Further evidence showed that Guiterrez's truck was seen at the crime scene at some point after the shooting had occurred.

Approximately three months after the shootings, police legally stopped a vehicle in which Guiterrez was a passenger.[3] Based on the belief that Guiterrez had been involved in the drug transaction and shootings, police put Guiterrez in

---

[3] The driver of the car, Maldonado, also known as Vincente, was arrested for driving without a proper license.

handcuffs, placed him in a patrol car, and took him to the precinct for questioning. Once there, Guiterrez waived his <u>Miranda</u> rights and stated, among other things, that he lived in the Magnolia Apartments, which is close in proximity to the apartment complex where the drug transaction occurred.

2. Guiterrez contends that this evidence was insufficient to support his conviction as a party to the crimes for which he was found guilty. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). "A person is concerned in the commission of a crime only if he: . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b). Approval of a criminal act, standing alone, does not rise to encouragement sufficient to establish that the defendant was a party to the crime. <u>Jordan v. State</u>, 272 Ga. 395 (1) (530 SE2d 192) (2000). There must be some evidence showing that the defendant shared a common criminal intent to commit the crimes in question with the actual perpetrators. <u>Jones v. State</u>, 250 Ga. 11, 13 (295 SE2d 71) (1982). Criminal intent may be inferred from the defendant's conduct before, during, and after the crime. <u>Belsar v. State</u>, 276 Ga.

5

261, 262 (1) (577 SE2d 569) (2003).

In the present case, the State has failed to elicit any evidence showing that Guiterrez was participating in the criminal scheme either before or during the actual commission of the crimes. The only evidence that the State has presented for this critical time period is the fact that Guiterrez lived in the Magnolia Apartments, where testimony indicated that the drugs were originally delivered. There was no testimony, however, that the drugs were taken to Guiterrez's apartment, and, as a result, the best that can be inferred is that the drugs were taken somewhere within the complex. As for the time period in which the drug transaction and the shootings occurred, the State presented no evidence that Guiterrez was present. As a result, there is simply no competent evidence that Guiterrez was present or otherwise involved in the planning or execution of the underlying drug transaction or subsequent shootings. Therefore, the evidence was insufficient to support his convictions.

Although the State and the trial court relied on Guiterrez's actions and knowledge after the commission of the crimes to support his convictions, this evidence is insufficient to satisfy the standard of OCGA § 16-2-20. At best, it would show that Guiterrez was an accessory after the fact, not a party to the

crimes.[4] "At common law and under modern practice, an accessory after the fact is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in the nature of obstruction of justice." Purvis v. State, 208 Ga. App. 653, 654 (433 SE2d 58) (1993). The State, however, did not charge Guiterrez with being an accessory after the fact.

Judgment reversed. All the Justices concur.

---

[4] Due to the same lack of evidence showing that Guiterrez was involved in the scheme or crimes before or during their commission, the State failed to prove that Guiterrez conspired to traffic cocaine.